310-0420, in the matter of Connie G, who was a state alumni at the way they were treated by Mrs. Connie G, about the girl's spawn. Is it spawn or span? Spawn. Okay, the spawn? Like the baseball player. Okay. Just as a preliminary matter, when these cases are heard at the trial level, the respondents have the opportunity to close the hearing to the public. And I would like to introduce Ms. Connie G, who is present in court today. And she understands that this is just legal argument, but she knows that we're going to be discussing some of her confidential personal mental health information. There were a few people in the courtroom, and we just asked them if they wouldn't mind waiting outside because of the confidential nature of the information that may come out. And it was just a couple of people, one person who was here for the next case, and he said, certainly, I'll be happy to wait outside. And a couple of other people were present, I guess, from the state prosecutor's office. But I don't know if other people will be coming in during the argument, but I just wonder if there's any possibility of just asking people to wait at this level during this argument. I'm not sure that we can. My problem, the record, and I'm just thinking out loud, would be welcome for any assistance from my colleagues, okay? Never had this arise before, but one thing I guess I ought to warn you, it's your choice whether to have oral argument, okay? But if you do this, this is being taped, and it's going to be on the Internet. And everything that's said in this room is going to be available for anybody that wants to go to the Supreme Court website and hear it. And we don't have the authority to stop that. So now, whether you want to proceed with the oral argument with that understanding, I guess that's pretty, I leave the choice to you. And if anybody else has any other suggestions, I- No, just that I, you know, other counsel can- If you want to take a moment, I would say- Would you like to take a moment and talk with your client for a second? That's fine. Yeah, I- Right, and Ms. G just asked me, does it use her full name? And I said, no. In mental health cases, the appeals are specifically filed as first name, last initial. And in some districts even, I think they just use initials where there are very identifiable names. But no, this would just be first name, last initial. And this has never come up for me too, because often we don't have our clients attending oral argument along with us. But I think it was more the idea of, because she's here present, and knowing that other people were present with her while this was going on. So I think we still want to proceed with oral argument. Yes, we will proceed with oral argument then. Shall I go ahead? Please. So, yes, I am Laurel Spahn from Illinois Guardianship and Advocacy, the Legal Advocacy Service Division. And our office was appointed Counsel on Appeal for Ms. Connie G. Seated next to me is Ron Wright, another attorney from our office. And as you know, behind me is Ms. Connie G herself. And I want to thank the court and opposing counsel, Mr. Leonard, for rescheduling the oral argument so that my client could come and observe the appellate process. So thank you for that. May it please the court, counsel, this case meets two exceptions to mootness that are applied in mental health cases. And both of these exceptions, public interest and capable of repetition, this court has applied in similar cases of statutory compliance, such as Robin C. from 2009. So I can expand on these exceptions or I can go right into the substantive issues. Your argument, certainly whether or not this actually, I don't tell you how to argue your case, but I can tell you that I have some concern about whether it actually does meet the mootness doctrine. So if you'd like to address that. I will. Thank you. First of all, the public interest exception applies here. The public interest exception has three parts to it. The public nature of the question, the need for authoritative determination, and the likelihood of future recurrence. Procedural questions related to involuntary commitment are considered matters of considerable public concern. And when there's statutory construction involved, that's also considered a matter of public concern. And I cite to the 5th District's Michael H. case in the briefs with respect to that. The arguments here include 3.8.10 dispositional reports. What constitutes a proper 3.8.10 dispositional report? Filing requirements. Who can file a petition for a voluntary admittee who has submitted a written request for discharge? And does the proper basis for admission have to be specified? And the third issue is right to rescind a five-day discharge request as a voluntary patient. And is there a right to do that? And what does that involve? These are three questions that will require the court to look at the statute, look at the mental health code, and construe what should properly be done. These are issues of first impression. So there is a need for authoritative determination. There is likelihood of future recurrence. Least restrictive alternative, which is determined because of the 3.8.10 dispositional report, using the 3.8.10 dispositional report, that's going to occur in every case. So that is certainly capable of recurrence. Every mental health case that goes forward to commitment, there must be that dispositional determination. With the preference, the legislative and statutory preference for voluntary admissions, these questions related to voluntary admission are likely to recur. And at least they're likely to recur at the Kenneth Young Center, where Ms. G had been admitted and where this case originated. Was this her only involuntary commitment, or had there been prior involuntary? You know, I did not argue collateral consequences because I was unsure of that. But I have not found any trace in the record that there has ever been an involuntary admission before. And from what I can tell, there have only been voluntary admissions. I know of no other involuntary admission in the state of Illinois. But not knowing what may have happened in other states, I did not pursue collateral consequences. Recently, though, there has been a case saying if there's no trace in the record of any history of past involuntary admissions, then we can apply that collateral consequences. So that may be something worth considering here, too. I did not have all the information to be able to propose that. But there's also capable of repetition, yet avoiding review. Like in the Robin C case from this district, the first criteria is met. The order here was limited to 90 days, and therefore too short a duration to fully litigate before the order expired. And like in Robin C, Ms. Chi could be subjected to similar involuntary treatment proceeding in the future, given her history. So applying Robin C to this case, this very easily meets the capable of repetition, yet avoiding review exception. I think it meets both public interest and capable of repetition. Some cases here in Illinois have applied multiple exceptions. We only need one to be able to have this case decided. But I think that under both public interest and capable of repetition, this case should be decided on the merits. I'd like to turn now to the incomplete dispositional report in violation of Section 3-810 of the Code. This Court has addressed 3-810 dispositional reports in just about every mental health case. It's decided over the last few years. Alaka W. in 2008, Robin C. 2009, and then Darrell C. in 2010. And we do thank this Court for taking the idea of disposition and least restrictive setting seriously, and emphasizing the importance of exploring less restrictive alternatives to a locked in patient hospital. In Alaka, Robin, and Darrell, no 3-810 reports were filed at all. Here, it seems like this Court's message has gotten through to the trial courts at least a little bit. Here, the State filed a one-page, handwritten treatment plan. So there are a couple of problems. First is that you need more than just a treatment plan to have a proper 3-810 dispositional report. We're missing other very important parts. We're missing the social investigation. We're missing the report on alternatives to hospitalization. But the treatment plan itself has problems. It does not contain the required elements that the Code mandates. Those elements include a description of the respondent's problems and needs, treatment goals, proposed treatment methods, and a projected timetable for their attainment. As you know from the record, the one-page, handwritten treatment plan seems as if it was an afterthought or maybe put together in a hurried fashion to be able to have something to submit to the trial court. But it doesn't fit the bill for a dispositional report. So lacking a complete 3-810 dispositional report, including the most important aspect of the dispositional report, what alternatives are available and why are they not appropriate? Without that complete information, the trial court did not have what it needed to make a decision about the committed person's disposition, if, in fact, their commitment was appropriate. I would like to turn to the need for strict compliance with the Mental Health Code's filing requirements. Can a fellow mental health patient petition for a voluntary patient who has submitted a five-day request for discharge? An implicit requirement in Section 3-403 of the Code is that when a person who is voluntary exercises her right to request a discharge, there's a five-business-day period that's then observed. And within that five-business-day period, a qualified person on the treatment team must make a clinical judgment about whether to discharge the person or file a petition for commitment and continue to hold the person based on the filing of that petition. The state agreed in its brief that the treatment team must make a clinical decision, but then the state says it's okay for a fellow mental health patient to be called upon to execute the petition. And that is terribly problematic and I don't think intended by the legislature. The problems include this is hearsay from a source of unknown reliability. This is abdicating. Is it hearsay? I mean, I guess kind of, but the other, the person, the affiant said, I heard your client say X and so that's just, it wasn't hearsay. What if a person on the street had said that? If a person on the street had said that to somebody? She said that I overheard your client saying, you know, threatening to harm or do herself harm and she needs help. What would be wrong with that? In other words, is it just the fact that this person is also a patient that makes this defective in your mind or does this evidence have to come from a clinician, a mental health expert? I think it's okay wherever it comes from, but then a clinician needs to do the petition. A clinician needs to make the judgment to file the petition. The petition is what starts this process. These are serious allegations that are going into a petition. And was the hospital being very, was the hospital being naive or was the hospital being very legalistic and savvy and trying to avoid liability here? If it's a bad petition, let's get somebody else to do it because, you know, if there had been a belief that this person had honestly said that, I think the treatment team could have, should have filed that petition. The treatment team makes the decision. Are we going to discharge this person or are we going to petition her? Here we had the treatment, no one on the treatment team filed the petition. It's somebody else. And the disturbing part about this is we don't know the disparate position of power that that other person may have been feeling. I just want to make sure I'm understanding what you're saying is that you said that it would be okay for another patient to say, I have overheard kind of you say X, Y, or Z, but that that should be brought to the clinician and then evaluated by them to make the determination of whether or not to file the petition based on their evaluation of what the, you know, roommate or a client is saying. So that including those as a basis for the petition isn't what's problematic to you. It's that, in fact, it was not the clinician then that signed and filed and made the decision. That is exactly my point because there does need to be some evaluation and determination as to whether based on what people are hearing and reporting and based on our observations and the person's otherwise engagement with treatment, does this person meet criteria for a commitment petition to be filed? Does that go to the weight of the petition or does it go to, in other words, what restriction does the code put on the restriction other than you've got to state the relationship? The code does not require that the petition be filed by a mental health expert, does it? You know, under Article IV, I believe it does because Article IV does not include that, quote, any person language. The section says a petition must be filed within that five-day period or at the end of that five-day period. It has to be filed if the person is not being discharged. And it refers to sections 3601 and 3602 and says that if the person is not discharged, then the person shall be released unless a petition and two certificates are filed. The petition has to meet the requirements of 3601B2 and the certificates have to meet the requirements of 3602. 3601A, 3601 paragraph A, talks about how any person can file. And section 3403 excludes that. It only refers to 3601B. There isn't authority for just anyone to file a petition in this circumstance where there's a voluntary patient who has signed a written request for discharge. I'd like to just go on to talk about... I'm sorry. Okay. Thank you. Thank you, Ms. Vaughn. Mr. Leonard? May it please the Court, Counsel. I'll address the mootness question first, and I believe that this case is moot. It doesn't reach the public interest exception. First point, the question presented is of a public nature. Sure, it's of a public nature, but most cases are of a public nature. This case does address interpretation of statutes, but just because that's present, that doesn't make this case any more special than any other case, say, a divorce case or criminal case, because this Court's called upon to do that every case. The second prong is there needs to be an authoritative determination for the future guidance of public officers. Well, I think we have plenty of case law on all of these subjects in this area. I cite many of those in my brief. This does not bring up a unique question of a constitutionality of a statute, which would impact further cases. Is this a common happening, this issue of whether someone has a non- This is a common happening issue. That a layperson has brought a petition. I haven't found much case law on it. Where a layperson has brought a petition. Usually that's not something in a case, but if you look to Section 3-601A, it says any person can bring a petition. Mostly it's usually a family member who brings the petition. It doesn't say it has to be a clinician. It says anybody. Anybody means anybody. And I can get to that point later when I address Issue 2. But usually that's not something questioned in cases, because the statute's so broad at 601A, meaning anybody can bring it. Usually there's no problem, because usually it's a family member. In this case, it's a little unique, because it was a fellow patient. And don't you think that's enough to invoke the public interest action? Because it is unique, and it isn't something we deal with very often? No, because if you look to this Section 3-601A, it means anybody. Anybody can be a person who is also a mental patient. So there's really nothing. It is unique, but it's not something that is out of the ordinary, because that's covered under 3-601A. You don't want to read more into the statute. The statute seems pretty broad. I guess the purpose of the legislature was to make it broad so that anybody with an interest can file this petition, and then later on the safeguards are the person has to be examined by physician within 24 hours, and then the second physician or mental health expert within 76 hours. So even though that part is unique, I don't think it's something that would be reoccurring that would meet the public interest exception. The third point or prong of the public interest exception is there's a likelihood of future reoccurrence of the question. In most cases before 2009, I think that was given, that there's a likelihood that if somebody is committed, it would be easier to commit that person in the future, but I cited the case of N. Ray Alfred, H.H. Supreme Court case that came out in 2009, and that case seems to make these types of cases more difficult to overcome the mootness doctrine. In that case, they address the capable of repetition yet avoiding review, as long as the other exceptions. I don't believe that this case meets the public interest exception, because it's not a concern of public interest. It's a regular case where this court will apply the facts to the statute and come to a conclusion. I think a public interest exception would have to be more open to, my example would be constitutionality of a statute. In that case, it would apply to other cases, other than just the facts being similar to another case is not enough to invoke the public interest exception. The second exception is capable of repetition yet avoiding review. Of course, that has two prongs. I can see the first prong, since it's such a short time period, it's only usually a 90-day commitment, it's too short for this court to address the issue before the case is over. But there is a second prong, and it doesn't meet the second prong. The case of N. Ray Alfred, H.H., the Supreme Court specifically stated that there's no reasonable expectation that the same complaining party would be subjected to the same action again. They kind of read that in a different light than they had in the past. Of course, a person could be subject again to involuntary commitment, but they said that's not enough. It has to be the same action, meaning the same lawsuit. So even though you have a similar action, it's not the same action. You have two different lawsuits, and the complaining party in both are the same, but the past action does not refer to the future action. And since 2009, I believe N. Ray Alfred, H.H. would conclude that this would be a moot issue and that this court should not address it. Regarding the second issue, whether the respondent was denied a request for discharge, the statute places the burden on the respondent to ask for a request for discharge. It also places the burden on the respondent to, I guess, request to revoke that request. Isn't the provision, I know in your brief you say that she could have written her own letter, but isn't the rescission, there's a portion right on the form that you've signed for the voluntary discharge. Isn't there a provision right at the bottom of that that then allows you within the body of that same form to rescind that? There is. And so when you request that, you're saying that if they say we aren't giving you one, then you have to somehow manufacture your own letter to do that? Well, the statute doesn't say anything about a form. I guess the form would probably be made up by the hospital. But just looking at the statute, all you'd have to do is write out, I am rescinding my request for release. There's no form. So you can't put the burden on the hospital to provide that, because that would be adding something to the statute which is not there. So my argument is that it is the respondent's responsibility to request or rescind that. Intertwined with that is the argument that a person such as a fellow patient can't, cannot file an involuntary petition for admission of that person. I kind of alluded to that earlier, but I refer to this section 3-601A again, and it says, any person in the case of in-rate James E. was a Supreme Court case. In that case, in Justice Thomas' concurrence, he addressed the fact that even though a person who is voluntarily committed, there is no prohibition in any of the statute or the Act that a person can't file a petition to involuntarily commit a person. So that kind of intertwines with the case that we have here. In this case, the respondent asked to be released. Then she changed her mind. She didn't rescind that because allegedly the hospital refused to give that form to her. I don't know if that was testimony or hearsay, but the statute seemed to place the burden on the respondent. All the respondent had to do was write down on any piece of paper, I wish to rescind my request to give that to one of the health personnel people there, and that would have been sufficient. Would she have needed to have explicit wording for something like that, or could she just write out, I want out? I think that would be appropriate. Anything to say that you want to rescind that. However, it's still the prerogative of any person to file that petition to have the person voluntarily committed. So the fact that she's there voluntarily does not mutually exclude somebody from filing a petition to involuntarily commit the patient. So in this case, that was done. That was proper under the Act, and that seems to be what Justice Thomas was saying and in Ray James E. in his concurring opinion. With regard to no dispositional report, we have to admit that the people did not provide all the documents, but first that issue was waived because it was never brought up at the trial level, and second, the case of People v. Robinson, another Supreme Court case, says that even though those documents were not tendered and properly admitted, they can be overcome by testimony of a doctor or clinician. In this case, the people submit that Dr. Ritteroff, he's the treating physician, his testimony along with Dr. Witherspoon's psychological evaluation, those two factors, those two forms, were sufficient to meet the statutory obligation of the people, and that was recognized in People v. Robinson. So if you don't have any questions, I'd ask that you affirm the trial judge's order. Thank you, Mr. Leonard. Ms. Spahn, any rebuttal? Yes, General. This is a case that did not need to go to trial. Ms. G. was a voluntary patient who had signed a form written request for discharge. She had wanted to rescind that request. Has she been permitted to do that? There would have been... I'm sorry, but let me just ask you, so is it your, I want to make sure I understand your argument, is basically your argument that before you can, if somebody has made a request for it to be released after involuntary, or a voluntary admission, and then there's a request or a petition to involuntarily commit, then it's the burden on the hospital to offer the patient an opportunity to rescind their request for a release? I think that's sort of putting two points together. Let me try to answer that. Had she been able to rescind her request for discharge within that five-day period before there had been any filing, there would have been no petition, there would have been no appointment of defense counsel, there would have been no independent exam paid for by Rock Island County, there would have been no hearing, there would have been no appeal. Had she been, had they given her the form, and she could have done like she did three times earlier, rescinded her request for discharge. She did not... How do they know that she wants to rescind it? In other words, you just offered, is it something they do to everybody? No. How does that work that they know when to offer somebody the opportunity to rescind their request? I'm going by what's in the record. There are two spots in the record. One, there's testimony by the treating psychiatrist saying she regretted that decision, and then there's she regretted that decision to sign a five-day and wanted to rescind like she had done other times. And the doctor talked about how that was something we had talked about. That was a nice way for her to have some control over her hospitalization. And it was also a chance for her to maybe have some in-depth discussion with her psychiatrist when she signed a request for discharge because he said before she had taken my advice and rescinded. And this time she had said, you know what, I wanted to rescind, but I was kind of upset with you. I signed the five-day because I was upset with you that you wouldn't give me a pass. I've been in the hospital for a month. I've been taking all my medication. I've been meeting with you on a regular basis. I bring my notebook to our meetings, and I take notes, and I bring up topics with you that I want to discuss. I'm doing your cognitive behavioral therapy. I've been here a month, and you're still not giving me a discharge date. So she signed her five-day, but she regretted it. She said, you know, I'm still willing to be here. I don't want to change psychiatrists, but I want you to hear me, doctor. So we also know from the independent examiner that she had wished to rescind. So first of all, there was that opportunity within the five days, within the five days from signing the request for discharge until five business days later when a decision had to be made. She said, can I rescind? No, not this time. We're sorry. We're not going to accept it. Now, she didn't have counsel at that time. The fourth district case cited in the brief talks about the recognition of the disparity of power between mental health patients in an inpatient setting and the treatment team. Okay. So it was futile for her to do anything. The other thing that could have happened, so that was at one point when the rescission would have mattered and would have saved a lot of court time, energy, money, et cetera. The other time when the whole concept of voluntariness could have come into play was during the course of the court proceedings. And once it was understood that, oh, this person is doing everything she needs to do, she understands what voluntary admission means, she may want to be voluntary, let's consider this because the legislature favors voluntary admission. It's much better to have somebody accept the treatment voluntarily than to have it forced upon them. There's the preference for voluntary admission, and the cases Hayes and Byrd are cited in the briefs. At that point, the state defense counsel or the judge could have said, wait a minute, is it really necessary for us to have an involuntary admission here? And the Byrd case says if we're going to involuntarily admit someone, there had better be a good reason if voluntary is a possibility. If there are no further questions, I would ask the court. Are you done answering Judge Schmidt's question? You can finish your thought. So there was the earlier time in the five-day period when a rescission would have mattered to prevent anything from getting to court at all. Then there was a second opportunity during the court proceedings to have a type of settlement. There's even a provision in the code for agreed outpatient order, 3801.5. So at that point, the respondent could have been allowed to enter into an agreed order and not have an involuntary admission order entered against her, or she could have rescinded at that time. There's not a time frame on rescission. Instead, she was ordered to be ---- Okay. Well, let me, one thing, just make sure I see if I can summarize what you just told me and I want to try to understand this. Within the five days or shortly thereafter, your client made it known that she really wished to rescind that, and nobody offered her something to sign. So it wasn't just you're not making the argument that they should do that to every patient, but when somebody says you don't want to rescind that, somebody ought to hand them a form. Yes, and I think as a lay person, she did not have the knowledge to know that she could write it on a napkin even. We will tell our trial clients, hey, if you ever want to rescind a five-day or if you want to request a five-day, you don't have to use the Department of Human Services form or the Kenneth Young Hospital form. You can write that on anything. Write it down and give it to a staff member, and then you better call us so we can follow up and make sure they're counting that because it doesn't require a form. But in this instance, a form had been used. As you said, Justice O'Brien, the form says at the bottom, at the top it says I request a discharge and that there's a place for a signature. At the bottom it says I would like to withdraw my request and there's a place for a signature. So in this instance, here is a respondent who understood she needed that form to be able to do that. All right. Okay, I welcome the response. You've answered my question. Thank you very much. We're out of time here. Thank you. This court will be in brief recess for a panel change. This matter will be taken under advisement and a written disposition.